AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the

Middle District of Florida

| United States of America | )  |
|---|---|
| v. | ) |
| | ) |
| JOAO MARCELO MENDES MINILLO | ) Case No.:6:25-mj-1484-JRK |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____April 17, 2025,_____ in the county of _____Osceola County_____ in the _____Middle_____ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 844(i) | Federal Arson |

This criminal complaint is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

_____

Elizabeth Goddard, Special Agent, ATF
*Printed name and title*

Sworn to before me over the telephone and
signed by me pursuant to Fed.R.Crim. P. 4.1 and 4(d)

Date:  ___May 8, 2025___

City and state:  ___Orlando, FL___

JAMES R. KLINDT
United States Magistrate Judge
*Printed name and title*

**STATE OF FLORIDA**                          **CASE NO. 6:25-mj-1484-JRK**

**COUNTY OF OSCEOLA**                         <u>**FILED UNDER SEAL**</u>

<u>**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**</u>

     I, Elizabeth Goddard, a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state as follows:

<u>**INTRODUCTION**</u>

     1.    I am a SA with ATF, and have been so employed since January 2010. As a Special Agent with ATF, I am authorized to investigate violations of the laws of the United States, and I have been involved with numerous criminal investigations involving violations of federal law. I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States.

     2.    As an ATF SA, I have completed the Criminal Investigator Training Program and ATF SA Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in the investigation of federal crimes involving firearms, narcotics, arson and explosives. I am currently assigned to the ATF Tampa Field Division, Orlando Field Office, and I am primarily responsible for the investigation of incidents involving arson. I have participated in numerous arrest and seizure warrants involving a variety of offenses, including violations pertaining to arson and explosives.

3.     In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator ("CFI"). As an ATF CFI, I am tasked with providing expert opinions as to the origin and cause of fires. I obtained the ATF CFI certification in 2017 following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI. To date, I have participated in over 150 fire scene examinations. Additionally, I have been certified as a fire investigator by the International Association of Arson Investigators since July 2017. I have also participated in over 100 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from February 2020 to April 2023, where I taught several topics during SA Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF National Academy.

4.     This affidavit is based upon my personal knowledge, a review of evidence obtained during the course of this investigation, and information obtained by me in my official capacity from other law enforcement officers.

5.     Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not set forth each and every fact that I have learned during this investigation. Rather, I have set

forth only those facts I believe are necessary to establish probable cause that support

violations of federal law that have been committed. Unless otherwise noted, all

statements of other persons described in this affidavit are set forth in substance and in

part, rather than verbatim.

## STATUTORY AUTHORITY

6.    18 U.S.C. § 844(i) provides the following:

> Whoever maliciously damages or destroys, or attempts to damage or
> destroy, by means of fire or an explosive, any building, vehicle, or other
> real or personal property used in interstate or foreign commerce or in
> any activity affecting interstate or foreign commerce shall be imprisoned
> for not less than 5 years and not more than 20 years, fined under this
> title, or both; and if personal injury results to any person, including any
> public safety officer performing duties as a direct or proximate result of
> conduct prohibited by this subsection, shall be imprisoned for not less
> than 7 years and not more than 40 years, fined under this title, or both;
> and if death results to any person, including any public safety officer
> performing duties as a direct or proximate result of conduct prohibited
> by this subsection, shall also be subject to imprisonment for any term of
> years, or to the death penalty or to life imprisonment.

Thus, it is a federal crime to maliciously damage or destroy by fire or explosive, or

attempt the same, any building, vehicle, or any other real or personal property used

in interstate or foreign commerce or affecting interstate or foreign commerce.

7.    The elements of a violation of 18 U.S.C. § 844(i) are as follows:

> (1) the defendant damaged, destroyed, or attempted to damage and
> destroy, a building, vehicle, or other real or personal property by means
> of a fire or an explosive;
>
> (2) the defendant acted intentionally or with deliberate disregard of the
> likelihood that damage or injury would result from his acts; and

3

(3) the building, vehicle, or other real or personal property that the Defendant damaged, destroyed, or attempted to damage or destroy, was used in interstate or foreign commerce, or in activity affecting foreign or interstate commerce.

*See* Eleventh Circuit Pattern Jury Instructions O28 (Federal Arson Statute).

8.    To determine whether a property is "used" in interstate commerce requires an "inquiry . . . into the function of the building itself, and then a determination of whether that function affects interstate commerce." *Jones v. United States*, 529 U.S. 848, 854 (2000) (internal quotation marks omitted). "This determination involves a three-part inquiry: (1) What is the function of the building? (2) Is the function of the building involved in commerce? (3) Does the commerce in which the building is involved sufficiently affect interstate commerce?" *United States v. Odom*, 252 F.3d 1289, 1294 (11th Cir. 2001).

## PROBABLE CAUSE

9.    The ATF and the Department of Financial Services Bureau of Fire, Arson, and Explosives Investigations ("DFS-BFAEI") are conducting a joint investigation involving arson in violation of 18 U.S.C. § 844(i) that occurred on or about April 17, 2025. On this date, an incendiary fire took place at a pharmacy retail store ("Pharmacy") located in Kissimmee, Florida, in the Middle District of Florida. The Pharmacy is part of a national chain of pharmacy retail stores that operate in multiple states and is actively used for commercial purposes, including the selling of products that moved in interstate and foreign commerce.

10.     An "incendiary fire," according to the National Fire Protection Association ("NFPA") 921 Guide for Fire and Explosion Investigations (2024 edition) is "a fire that is intentionally ignited in an area or under circumstances where and when there should not be a fire."

11.     On or about April 17, 2025, at approximately 1:56 p.m., the Osceola County Sheriff's Office ("OCSO") responded to a commercial fire at the Pharmacy in Kissimmee, Florida. Osceola County Fire Rescue responded to the Pharmacy and requested DFS-BFAEI conduct a fire origin and cause investigation. DFS-BFAEI requested ATF assistance, and an ATF SA responded to the scene.

12.     During the investigation, law enforcement officers classified the fire as intentionally set and incendiary. The suspect(s) poured a suspected ignitable liquid in the aisle and on products stocked on the shelves. An unidentified open flame device, such as a match or lighter, was used to start the fire.

13.     Law enforcement officers observed the remains of a spout from a suspected gasoline container on the ground near the front corner pillar of the Pharmacy. An accelerant detection canine alerted on the spout from a suspected gasoline container and alerted on two areas of debris inside the Pharmacy within the same aisle. The spout from a suspected gasoline container and two areas of debris in the aisle were collected for evidence and submitted for laboratory analysis.

14.     Law enforcement officers located a melted red plastic container in the same aisle where an accelerant detection canine alerted in two areas of debris inside the Pharmacy within the same aisle. An accelerant detection canine alerted on the

melted red plastic container while running through a discrimination line. The melted red plastic container was collected and submitted for laboratory analysis.

15.    Law enforcement officers conducted a video canvass of the area surrounding the Pharmacy. The owner of a nearby restaurant business consented to law enforcement officers reviewing the restaurant business's surveillance video around the time of the fire. The surveillance video is offset by 1 hour due to daylight savings time; the times below have been adjusted to reflect the 1 hour offset. Law enforcement officers discovered the following after watching the surveillance video:

    a.    On April 17, 2025, at approximately 1:53 p.m., an individual walked from the area of the intersection towards the Pharmacy. The individual was wearing dark colored clothing; and

    b.    On April 17, 2025, at approximately 1:54 p.m., an individual, who appears to be the same person described in paragraph 15(a), above, continued to walk towards the Pharmacy, approaching the front pillar of the Pharmacy carrying something and then stopped at the front corner pillar of the Pharmacy and bent down then stood back up and walked towards the front door of the Pharmacy.

16.    Law enforcement officers interviewed several Pharmacy employees. Pharmacy Employee-1 sustained injuries from the fire incident and was transported to the hospital for medical treatment. Pharmacy Employee-1 stated: "I see this guy with a gas can" and "what the [expletive] is he doing with that?" Pharmacy Employee-1 states it looked like a little red gas can.

17.    Pharmacy Employee-2 stated that they smelled something before the explosion, and it smelled like gasoline.

18.    Pharmacy Employee-3 stated there was a very strange and strong odor of gasoline in the store, something they never smelled inside the store before. Pharmacy Employee-3 stated that after they smell gasoline, they moved around to trace the smell, and then they heard a big explosion and flames coming towards them.

19.    Law enforcement officers interviewed an employee at a nearby business in Kissimmee, Florida, located across the street from the Pharmacy. An employee of this business stated that an individual came up to them in the store and the employee observed the individual's face was red, there were burn marks on the person's hands, and the person was in a panicked state. The employee stated that the individual was asking about burn cream, the employee assisted the individual with locating burn cream, and the employee remembered giving the individual burn gel. The employee stated the individual smelled like gasoline and burned hair and further stated that when they went back to work, they remembered the individual was touching their beard, and found some of the person's hair had fallen out.

20.    Another employee at the same nearby business collected the person's hair that had fallen out in the business, and the employee placed it into a white envelope and provided it to investigators. An employee at the business did not recall going into the cashier register to cash out the individual and believed the individual may have left the business without paying for the burn gel.

21.    Law enforcement officers reviewed surveillance video from business near the Pharmacy and discovered the following after watching the surveillance video:

    a.    On April 17, 2025, at approximately 1:57 p.m., an individual walks through the front door of the business from the direction of the intersection. The individual continues to walk through the store. The individual is wearing a black t-shirt and black pants;

    b.    On April 17, 2025, at approximately 1:58 p.m., an individual, who appears to be the same person described in paragraph 21(a), above, is walking with a business employee towards the back of the store and the employee is showing the individual the products on the shelves. The individual has a product in his hands and walks towards the front of the store; and

    c.    On April 17, 2025, at approximately 1:59 p.m., an individual, who appears to be the same person described in paragraphs 21(a) and 21(b), above, walks out through the front door of the business without paying and travels towards the direction of a nearby auto parts store.

22.    Law enforcement officers reviewed surveillance video from a barbershop located near the Pharmacy in Kissimmee, Florida. The barbershop consented to law enforcement officers reviewing the business's surveillance video, and investigators discovered the following after watching the surveillance video:

    a.    On April 17, 2025, at approximately 1:44 p.m., an individual, who appears to be the same person described in paragraphs 21(a), 21(b), and 21(c), above, is handling stuff inside a red box on the barber chair. The individual then walks out the front door of the barbershop; and

    b.    On April 17, 2025, at approximately 2:03 p.m., an individual, who appears to be the same person described in paragraphs 21(a), 21(b), 21(c), and 22(a), above, walking through the front door of the barber shop to the back of the shop looking at his arms and hands which appear to be red.

23.    Law enforcement officers reviewed surveillance video from a discount store located near the Pharmacy in Kissimmee, Florida. The discount store consented to law enforcement officers reviewing the business's surveillance video around the time of the fire. After watching the surveillance video, law enforcement officers discovered that on April 17, 2025, at approximately 2:28 p.m., an individual, who appears to be the same person described in paragraphs 21(a), 21(b), 21(c), 22(a), and 22(b) walks into the discount store, and the individual was wearing a black t-shirt and black pants. A discount store employee stated the individual smelled like smoke.

24.    The following items of evidence were submitted for DNA testing and laboratory analysis to the ATF Forensic Science Laboratory:

        a.    A gasoline type spout;

        b.    Melted red plastic container; and

        c.    Hair recovered from the business (*see* paragraphs 19 and 20, above).

25.    Law enforcement officers reviewed an OCSO body worn camera video from April 17, 2025, from a time frame of approximately 3:45 p.m. to 5:03 p.m., and discovered that an OCSO deputy spoke to Joao Marcelo Mendes Minillo ("MENDES MINILLO") at the barbershop referenced in paragraph 22, above. MENDES MINILLO acknowledged to the OCSO deputy that he was inside the Pharmacy and was injured from the fire incident. MENDES MINILLO was not able

to provide identification to the OCSO deputy when asked, but did provide his name. The OCSO deputy observed that MENDES MINILLO was red in his face and arms. MENDES MINILLO told the OCSO deputy that he did not know why the OCSO deputy was asking him questions, and the OCSO deputy informed MENDES MINILLO that it related to trespassing. MENDES MINILLO responded, "oh trespassing." The OCSO deputy ran MENDES MINILLO's name through a law enforcement system and asked MENDES MINILLO how long he has been in Kissimmee, and MENDES MINILLO states he is done with the questions.

26.     In the OCSO deputy's body worn camera, I observed that MENDES MINILLO was wearing a black t-shirt and black pants. The OCSO deputy discovered that MENDES MINILLO has an outstanding warrant in Polk County, and informed MENDES MINILLO of the same.

27.     Law enforcement officers took MENDES MINILLO into custody due to the warrant, and officers searched MENDES MINILLO prior to placing him into the police car. During the search of MENDES MINILLO incident to his arrest, law enforcement officers discovered a yellow pocket lighter, similar to a BIC pocket lighter, in MENDES MINILLO's front right-side pocket inside his black pants.

28.     Law enforcement officers later transported MENDES MINILLO to the hospital for medical treatment for his burn injuries.

29.     On May 6, 2025, ATF Digital Forensics Branch ("ATF DFB") was able to extract the Pharmacy's surveillance video from the server. The Pharmacy provided consent to ATF DFB for surveillance video extraction from the server. Law

enforcement officers reviewed several still images and discovered MENDES MINILLO carrying a red gasoline container into the Pharmacy. MENDES MINILLO is wearing a black shirt, black pants, and black and white shoes:



30.     Law enforcement officers reviewed a video clip from ATF DFB, and MENDES MINILLO is seen emptying liquid from the red gasoline container into the aisle of the Pharmacy and on products located on shelves in the Pharmacy. MENDES MINILLO is observed bending down in a Pharmacy aisle, presumably igniting the vapors of an ignitable liquid, and then there is fire observed in the Pharmacy.

## **CONCLUSION**

31.    Based on the foregoing, I respectfully submit that there is probable

cause to believe that on or about April 17, 2025, Joao Marcelo MENDES-MINILLO

committed arson in violation of 18 U.S.C. § 844(i).

Respectfully submitted,

_____

Elizabeth Goddard, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Affidavit submitted by email and
attested to me as true and accurate by
telephone consistent with
Fed. R. Crim. P. 4.1 and 4(d) before me
this 8th day of May, 2025.

JAMES R. KLINDT
United States Magistrate Judge

12